

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-18-2008

# Piskanin v. Hammer

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2518

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Piskanin v. Hammer" (2008). *2008 Decisions.* Paper 1425.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1425

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

DLD-79                                                                                NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 07-2518

———————————

MICHAEL J. PISKANIN,
                                        Appellant
                          v.

GARY HAMMER, Detective; RICHARD LOBACH;
COLONIAL REGIONAL POLICE DEPARTMENT AND
SUPERIOR MUNICIPALITIES; TODD L. BUSHKIRK,
Individually and as Warden of Northampton County Prison;
COUNTY OF NORTHAMPTON; JAMES KATURA, Lt.
individually and as a Guard, Employee of Northampton
County; HOLIDAY INN OWNERS, JOHN DOE(5)

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 04-cv-01321)
District Judge:  Honorable John R. Padova

_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
December  6, 2007

Before:   BARRY, CHAGARES and NYGAARD, CIRCUIT JUDGES

(Opinion filed:  March 18, 2008 )

———————————

OPINION

———————————

PER CURIAM

Appellant Michael J. Piskanin was convicted following a jury trial in the Court of Common Pleas of Lehigh County, Pennsylvania of theft by deception, receiving stolen property, and sixty counts of identity theft, in violation of 18 Pa. Cons. Stat. Ann. §§ 3922(a), 3925(a), and 4120, respectively. Piskanin was arrested on March 10, 2004 by Detective Gary Hammer of the Colonial Regional Police Department, Northampton County, following an investigation, which then was continued by the Pennsylvania State Police. That investigation began when, on February 9, 2004, Detective Hammer received a complaint of criminal mischief to a hotel room at a Holiday Inn from its manager, Richard Lobach. The occupants had vacated the premises two days before. Detective Hammer inspected the room, which had significant damage to it, and retrieved fake Pennsylvania driver's licenses and counterfeit checks. The licenses were subsequently determined to have Piskanin's picture on them.

Detective Hammer obtained an arrest warrant for Piskanin from a District Magistrate in Northampton County. Piskanin was arrested outside a different motel, the Microtel Inn. He was searched and found to be carrying fake driver's licenses. A Pennsylvania State Trooper arrived on the scene of the arrest, removed a wallet from Piskanin in a search incident to the arrest, and transported him to the barracks in Lehigh County. Piskanin removed thirteen counterfeit checks from his pocket at the barracks and

turned them over.  All of the items found on Piskanin on March 10, 2004 were turned over to the state trooper, including several wallets and 55 forms of identification bearing Piskanin's photograph.

In addition, a search warrant was executed on Room 136 at the Microtel Inn, where Piskanin was staying, pursuant to the approval of a Lehigh County District Justice. A search of the room yielded substantial evidence, including a computer, printer-scanner, software, counterfeit identification cards, check-making stationary/check stock, ten complete identification cards, and purchase receipts from businesses.  On Piskanin's computer, among other things, a state trooper found a template containing a blank form Pennsylvania driver's license with Piskanin's picture on it.  (It was blank with respect to date of birth and address.)  The trooper used the confiscated purchase receipts to contact the businesses where Piskanin had passed the counterfeit checks.

Piskanin was removed from Lehigh County and taken to appear before a District Justice in Northampton County, who set bail at $10,000.  Initially, he was placed in a holding cell, but Lieutenant Kostura, of the Northampton County prison, removed him from the holding cell and placed him on suicide watch.  Piskanin's religious medal/necklace was taken from him, and he was unable to contact a bail bondsman or counsel, or to file a petition for writ of habeas corpus while on suicide watch.

Piskanin filed pretrial motions to suppress the evidence which had been seized from his former and current motel rooms, his and his girlfriend's automobiles, the burned

3

remains of his former residence, and incident to his arrest. The Honorable Kelly L. Banach of the Lehigh County Court of Common Pleas denied the motions, concluding, among other things, that Piskanin had no reasonable expectation of privacy in the Holiday Inn room he had checked out of, and that the search of his Microtel Inn room and of his person incident to the arrest comported with state law and the Fourth Amendment.[1]

At trial, the Commonwealth presented the testimony of 34 witnesses who stated that an unknown individual used their personal information without permission. Each witness was shown a Pennsylvania or Delaware driver's license depicting Piskanin, but containing personal information belonging to the witness or members of his family, and each witness testified that their personal information was on the license, without their permission. Four business owners recognized Piskanin as the person who presented a bad check at their business.

Piskanin is presently incarcerated as a result of this verdict. He filed suit under 42 U.S.C. §§ 1983 and 1985(3) in United States District Court for the Eastern District of Pennsylvania, alleging violations of his constitutional civil rights against the Colonial Police Department, Detective Hammer, Richard Lobach, Northampton County Prison Warden Todd Bushkirk, Lieutenant James Kostura, and the County of Northampton in connection with an alleged conspiracy to conduct illegal searches and seizures and to

---

[1] The state trial judge also upheld the searches of Piskanin's former residence, his and his girlfriend's automobiles, and a storage locker.

4

arrest him, and an alleged conspiracy once he was jailed to violate his right to bail and counsel, right of access to the courts, right to be free from cruel and unusual punishment in the form of confinement to a suicide watch, and his First Amendment right to keep his religious medal/necklace.

The District Court dismissed the Colonial Police Department and the County of Northampton early in the litigation pursuant to Monell v. Dep't of Social Services of City of New York, 436 U.S. 658 (1978), and claims against Warden Buskirk and Lieutenant Kostura in their official capacities were dismissed as well. Discovery ensued and Piskanin was deposed. He voluntarily agreed to dismiss defendant Lobach from the action. The remaining defendants moved for summary judgment.

In various orders and opinions, the District Court granted the remaining defendants' motions for summary judgment and denied a motion for reconsideration.[2] The court held that the suit against Detective Hammer alleging Fourth Amendment violations was barred by Heck v. Humphrey, 512 U.S. 477, 489 (1994), because success on the civil rights claims would necessarily imply the invalidity of Piskanin's convictions. As those convictions had not been invalidated, Heck required dismissal of the action. Summary judgment was granted on the conspiracy count under section 1985(3) against defendants Buskirk, Kostura and Hammer, because there was no evidence that these

---

[2] These orders were entered on the docket on March 29, 2007 (D.E. No. 130), April 30, 2007 (D.E. No. 136), May 7, 1007 (D.E. No. 138) and May 9, 2007 (D.E. No. 139).

individuals acted out of an anti-Catholic bias.[3] The court further found no evidentiary basis whatever for Piskanin's section 1983 claims against Buskirk, Kostura and Hammer, concerning the denial of counsel, the right to bail, or the right of access to the courts.

The District Court also awarded summary judgment to Buskirk, Kostura and Hammer on the Eighth and First Amendment claims. The record showed that Kostura placed Piskanin briefly on suicide watch because of his strange assertion that he was working undercover for law enforcement authorities, an assertion which could not be verified and which appeared to indicate emotional distress. Piskanin also asked to be placed in protective custody. Dr. Alex Thomas interviewed Piskanin on March 14, 2004, four days after Kostura placed him on suicide watch, and kept him on suicide watch. He was seen by a psychiatrist two days later and the suicide watch was discontinued. Personal items were taken from Piskanin while he was on suicide watch, including his religious medal/necklace. It was mailed to a family member, who eventually mailed it back to Piskanin, but he was without it for approximately 30 days.

The District Court concluded that these circumstances provided an insufficient evidentiary basis for a trial on either the Eighth or First Amendment claims. Piskanin's placement for a brief period of time on suicide watch and the removal of his religious medal/necklace did not amount to punishment prior to an adjudication of guilt, Bell v.

---

[3] Piskanin alleged that these defendants were motivated by a Masonic-inspired, class-based animus to deprive him of his civil rights because he is Roman Catholic.

<u>Wolfish</u>, 441 U.S. 520, 535 n.16 (1979), and reasonably served the legitimate purpose of protecting him from harming himself, <u>Hubbard v. Taylor</u>, 399 F.3d 150, 159 (3d Cir. 2005). In addition, Piskanin's First Amendment right to free exercise of religion was not impermissibly impinged by the confiscation of his medal/necklace, because confiscation satisfied the legitimate and neutral purpose of protecting him, and he was not otherwise prevented from practicing his religion. <u>Turner v. Safley</u>, 482 U.S. 78, 89-90 (1987); <u>Sutton v. Rasheed</u>, 323 F.3d 236, 252-53 (3d Cir. 2003).[4]

Piskanin appeals. Our Clerk granted his motion to proceed <u>in forma pauperis</u> and advised him that his appeal was subject to dismissal under 28 U.S.C. § 1915(e)(2)(B). The Warden of the State Correctional Institution at Cresson, where Piskanin is incarcerated, was directed to make the initial fee assessment, 28 U.S.C. § 1915(b). Piskanin has filed a motion for reconsideration of the Clerk's Order and objects to money being deducted from his prison account for the purpose of paying the appellate fees. He claims a $300.00 exemption under state law.

We will dismiss the appeal as frivolous. An appellant may prosecute his appeal without prepayment of the fees, 28 U.S.C. § 1915(a)(1), but the <u>in forma pauperis</u> statute provides that the Court shall dismiss the appeal at any time if the Court determines that it

---

[4] In addition, the District Court awarded summary judgment to the defendants on Piskanin's claim that his telephone data was obtained in violation of the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. Ann. § 5725(a), and the court denied Piskanin's request to be released from prison.

is frivolous, 28 U.S.C. § 1915(e)(2)(B)(i). An appeal is frivolous when it lacks an arguable basis either in law or fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). Our review of the District Court's grant of summary judgment is plenary and we must affirm summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

We conclude that there is no arguable basis in fact or law for disagreeing with the District Court's summary judgment determination. Neitzke, 490 U.S. at 325; Celotex Corp., 477 U.S. at 322-23. We have carefully reviewed the record, including the state court opinions submitted with one of the summary judgment motions. The Opinions of the District Court are thorough and well-reasoned, and we readily approve of the reasoning of the District Court in full. Summary judgment was proper because the action is barred as to some counts, Heck v. Humphrey, 512 U.S. at 489,[5] and there was an

---

[5] In Gibson v. Superintendent, N.J. Dep't of Law and Public Safety, 411 F.3d 427 (3d Cir. 2005), cert. denied, 547 U.S. 1035 (2006), we addressed whether Heck v. Humphrey's favorable termination rule applied to Fourth Amendment claims, and we approved of a fact-based inquiry into whether the particular claim implied the invalidity of the underlying conviction. Id. at 447-451. Here, we agree with the District Court's threshold determination that Piskanin's Fourth Amendment claims, if successful, would have the effect of rendering his criminal convictions invalid. Id. at 451. Piskanin's case is on appeal to the Superior Court, Commw. v. Piskanin, 2381 EDA 2007, and his brief is due on December 31, 2007, according to the public docket. His conviction thus has not been invalidated. In addition, the state trial judge addressed a sufficiency of the evidence argument in her Pa. R. App. Pro. § 1925(a) opinion and she noted that the evidence seized, including the thirteen counterfeit checks taken from Piskanin's person at the barracks, the over fifty checks seized from the Microtel Inn room, the four wallets

insufficient evidentiary basis on which a reasonable jury could find in Piskanin's favor on the other counts, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986).

We will dismiss the appeal as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i). The motion for reconsideration of the Clerk's Order is denied.[6]

---

containing fake identifications and the over 50 fake identification cards turned over on the day of Piskanin's arrest, provided the basis for the jury's verdict. Thus, Piskanin's Fourth Amendment claims, if successful, would have the effect of rendering his criminal convictions invalid.

[6] The Prison Litigation Reform Act permits an inmate's account to be assessed for the appellate docketing fees, 28 U.S.C. § 1915(b), without regard to state statutes exempting the value of certain amounts of money from attachment or execution. <u>See</u> <u>generally</u> <u>Cosby v. Meadors</u>, 351 F.3d 1324, 1326-27 (10th Cir. 2003) (if *in forma pauperis* prisoner has means to pay monthly partial filing fee, as required under Prison Litigation Reform Act, his failure to pay may result in dismissal of his case).

9